```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

Aflac, Inc.,                      *

      Plaintiff,                 *

vs.                               *

                                             CASE NO. 4:13-CV-63 (CDL)

SDT Air, LLC,                     *

      Defendant.                 *

_____

## O R D E R

Plaintiff Aflac, Inc. ("Aflac") wanted to sell its corporate jet. Defendant SDT Air, LLC ("SDT Air") wanted to buy it. SDT Air thought they had a deal. Aflac thinks otherwise. Their dispute has given rise to two separate lawsuits in two different federal courts. Aflac won the race to the courthouse and filed this action in this Court for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Aflac asks the Court to declare that Aflac had no legal obligation to continue to negotiate, that Aflac violated no duty toward SDT Air in withdrawing from further negotiations, and that Aflac is not liable for any of SDT Air's incurred expenses. SDT Air subsequently filed its action for damages in the United States District Court for the Eastern District of Louisiana. SDT Air prefers to litigate this dispute in Louisiana and has filed a motion to dismiss this Georgia action for lack of

personal jurisdiction.   Def.'s Mot. to Dismiss, ECF No. 18.
Alternatively, it seeks a dismissal, stay or transfer of this
action in favor of the Louisiana action.   *Id.*   For the reasons
described in the remainder of this Order, the Court denies SDT
Air's motion.

JURISDICTIONAL FACTS

SDT Air's motion depends upon whether it "transacted
business" in Georgia and the extent of its "contacts" with this
state.   Therefore, the Court takes a detailed look at the
alleged jurisdictional facts in the present record to evaluate
the pending motion.   These facts are taken from the allegations
in the Complaint and the subsequent affidavits filed in relation
to the pending motion.

This dispute arises from negotiations to purchase Aflac's
1995 Falcon 50 jet aircraft ("Aircraft") for $2.8 million.   The
Aircraft was stored at all relevant times in a hangar at the
municipal airport in Columbus, Georgia.   Aflac has its
headquarters and principal place of business in Columbus,
Georgia, and its employees who participated in the negotiations
regarding the Aircraft worked at Aflac's Columbus, Georgia
offices.   In early 2013, Aflac retained Guardian Jet, LLC
("Guardian Jet"), an aircraft broker in Connecticut, to sell the
Aircraft.

2

On February 21, 2013, Guardian Jet initiated contact with SDT Air, a Louisiana company, to sell the Aircraft. SDT Air, through its Louisiana attorney Michael Hubbell, engaged in negotiations with Guardian Jet to purchase the Aircraft. Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss [hereinafter Pl.'s Resp.], Mikolay Aff. ¶ 6, ECF No. 19-1. SDT Air sent a proposed letter of intent to purchase the Aircraft to Guardian Jet, who forwarded it to Aflac's legal department in Columbus, Georgia. *Id.* ¶ 7-8. SDT Air's offer identified Aflac as the owner of the Aircraft and Kriss Clonginger as Aflac's CFO and included a term to inspect the Aircraft at its "current location." Pl.'s Resp. Ex. 6, Initial Letter of Intent ¶ 6, ECF No. 19-10.

On February 25, 2013, an Aflac employee in the legal department in Columbus, Georgia, Jenette Mathai ("Mathai"), submitted several changes to the proposed letter of intent to SDT Air through Guardian Jet. Mikolay Aff. ¶¶ 8-9. One change advised SDT Air that the Aircraft's "home base" is Columbus, Georgia and that its requested initial inspection would thus take place in Columbus, Georgia. Pl.'s Resp., Mathai Aff. ¶ 7, ECF No. 19-2. Guardian Jet incorporated all requested changes into a memo and sent it to SDT Air. Pl.'s Resp. Ex. 7, Memo from M. Mikolay to M. Hubbell 2, ECF No. 19-11. On February 27, 2013, SDT Air executed a letter of intent incorporating most, but not all, of those changes. Pl.'s Resp. Ex. 1, Email from M.

Hubbell to M. Mikolay et al. (Feb. 27, 2013), ECF No. 19-5 at 2. An email the next day refers to SDT Air's "right to send a certified mechanic to [Aflac's] facility" to conduct the inspection in section 6 of the letter of intent.  Pl.'s Resp. Ex. 1, Email from M. Mikolay to M. Hubbell et al. (Feb. 28, 2013), ECF No. 19-5 at 1.

On March 1, 2013, Guardian Jet sent invitations for a conference call to SDT Air representatives, Guardian employees, and two Aflac employees: Mathai and Mike Scheller ("Scheller"). Def.'s Mot. to Dismiss, Hubbell Aff. ¶¶ 9-14, ECF No. 18-9; Mikolay Aff. ¶ 13.  Mathai was based in Aflac's corporate offices in Columbus, Georgia, and Scheller was Aflac's Aviation Director in Columbus, Georgia.  Mathai Aff. ¶ 1; Pl.'s Resp., Scheller Aff. ¶ 1, ECF No. 19-3.  When SDT Air sought to reschedule the time of the conference call, it replied to all recipients including Mathai and Scheller in Columbus, Georgia. Pl.'s Resp. Ex. 3, Email from M. Hubbell to M. Hubbell et al. (Mar. 1, 2013), ECF No. 19-7 at 2.  Although SDT Air admits it sent the emails to Mathai and Scheller, SDT Air claims it was not aware at the time that those Aflac employees were located in Columbus, Georgia.  Hubbell Aff. ¶ 12.  The following day, SDT Air participated in the conference call with Guardian and the Georgia-based Aflac employees, but it maintains that even at that time, it was unaware that anyone on the conference call was

4

located in Georgia. *Id.* ¶ 14. During the conference call, Mathai personally agreed to make revisions to reflect final agreements. Mathai Aff. ¶ 10. She did so and sent the final version to Guardian Jet, who forwarded it to SDT Air, copying Mathai and the others in the "working group." Pl.'s Resp. Ex. 4, Email from M. Mikolay to M. Hubbell et al. (Mar. 4, 2013), ECF No. 19-8 at 1. Scheller was also on the call, which lasted approximately 45 minutes. Scheller Aff. ¶ 6.

On March 4, 2013, SDT Air copied Mathai and Scheller on three emails to Guardian Jet, one of which included the final letter of intent executed by SDT Air to be counter executed by Aflac. Pl.'s Resp. Ex. 9, Emails from M. Hubbell to M. Mikolay et al. (Mar. 4, 2013, 5:57 PM, 2:37 PM, & 12:38 PM), ECF No. 19-13 at 1-3. The letter of intent provided for a purchase price of $2.8 million and provided that SDT Air "will examine the Aircraft and records with its own FAA certified A&P mechanic prior to the execution of the subsequent Aircraft Purchase Agreement at the Aircraft's home base in Columbus, Georgia[,]" that SDT Air and Aflac "shall mutually agree on the scope and depth of the aforementioned review prior to the initiation of the examination[,]" that SDT Air submit a $150,000 escrow payment to Aflac's agent within 2 days, that both parties keep all information strictly confidential, and that SDT Air cooperate with Aflac to structure the sale to have favorable tax

implications, including making amendments to agreements.   Pl.'s
Resp. Ex. 8, Final Letter of Intent ¶¶ 1, 5, 6, 8, 10, ECF No.
19-12.   Aflac executed the letter of intent and escrow agreement
in Columbus, Georgia and sent them to SDT Air through Guardian
Jet.   *Id.* & Escrow Agreement, ECF No. 19-12 at 1; Pl.'s Resp.
Ex. 10, Email from M. Mikolay to M. Hubbell (Mar. 5, 2013), ECF
No. 19-14.   In accordance with the agreements, SDT Air deposited
$150,000 with Aflac's escrow agent in Oklahoma which would be
released to Aflac at closing.[1]   Escrow Agreement 1.

Shortly after the foregoing activities, a Southwest airline
pilot acting on SDT Air's behalf called Scheller directly in
Columbus, Georgia to gather information for SDT Air's upcoming
inspection of the Aircraft in Columbus, Georgia.   Scheller Aff.
¶ 7.   Scheller answered some questions and advised him to
contact Dale Haughton, Aviation Maintenance Director at Aflac.
*Id.*   The pilot then called Haughton in his office in Columbus,
Georgia once or twice to make arrangements for the Aircraft
inspection in Columbus, Georgia, explaining that SDT Air hired
Boca Aircraft Maintenance in Florida to locate a certified
aircraft inspector to travel to Columbus, Georgia for the
inspection.[2]   Pl.'s Resp., Haughton Aff. ¶ 5, ECF No. 19-4.
Haughton called Boca Aircraft Maintenance, which told him to

---

[1] Because the deal never closed, the funds never entered Georgia.
Hubbell Aff. ¶ 16.
[2] The inspection never occurred.   Def.'s Mot. to Dismiss, Russell Aff.
¶ 9, ECF No. 18-12.

contact Richard Dadasiewicz, who had been hired to complete the inspection in Columbus, Georgia on behalf of SDT Air. *Id.* ¶ 6. Haughton called Dadasiewicz, who confirmed that he was the third-party inspector working for SDT Air and that he planned to spend five days in Columbus, Georgia reviewing the Aircraft and its log books. *Id.* ¶ 7. The two discussed travel arrangements to Columbus, Georgia. *Id.* Haughton later emailed Dadasiewicz to inform him that he was approved for access to Aflac's records on the Aircraft in the computerized aircraft maintenance program (CAMP). Pl.'s Resp. Ex. 12, Email from D. Haughton (Mar. 7, 2013), ECF No. 19-16.

On March 6, 2013, Aflac sent SDT Air a draft of the purchase agreement for review. Def.'s Mot. to Dismiss Ex. F, Draft Aircraft Purchase Agreement, ECF No. 18-7. But then on March 7, 2013, Aflac informed SDT Air, through Guardian Jet, of Aflac's intent not to sell the Aircraft. Mikolay Aff. ¶ 18. That same day, SDT Air sent a demand letter specifically addressed to "Jenette Mathai Senior Associate General Counsel Legal Affairs AFLAC Incorporated 5290B Armour R[oa]d, Hang[a]r 20 Columbus, Georgia 31909" via certified mail demanding that Aflac continue negotiations with SDT Air. Pl.'s Resp. Ex. 5, Letter from M. Hubbell to J. Mathai (Mar. 7, 2013), ECF No. 19-9 at 2-3 [hereinafter Demand Letter]. SDT Air also resent the Demand Letter via emails to Mathai and Aflac's attorney in

Florida.  Pl.'s Resp. Ex. 5, Email from K. Whalen to J. Mathai & S. Lapayowker (Mar. 8, 2013), ECF No. 19-9 at 1.  On March 9, 2013, SDT Air sent Aflac another email estimating damages of $354,950.00 for Aflac's alleged breach of its obligations under the letter of intent.  Pl.'s Resp. Ex. 11, Email from M. Hubbell to S. Lapayowker (Mar. 9, 2013), ECF No. 19-15 at 1-2 [hereinafter Second Demand Letter].

DISCUSSION

When a plaintiff seeks to have a court exercise personal jurisdiction over a nonresident defendant, that plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).  If the defendant submits affidavit evidence challenging jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*  In this case, both parties have submitted affidavits in support of their positions.

To determine whether personal jurisdiction exists over SDT Air, the Court engages in a two-step inquiry.  First, the Court must decide whether jurisdiction exists under Georgia's long-arm statute, O.C.G.A. § 9-10-91; and if it does, the Court next evaluates whether the exercise of jurisdiction comports with the

Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 1257-58.

## I.   Georgia's Long-Arm Statute

Georgia's long-arm statute authorizes jurisdiction over a nonresident who "transacts any business within [Georgia]" for any claims against the nonresident that arise from that transaction of business. O.C.G.A. § 9-10-91(1). In this case, the Court must determine whether SDT Air's acts regarding its attempted purchase of Aflac's Aircraft, which have given rise to this declaratory judgment action, amount to the "transact[ion of] any business" in Georgia for purposes of the Georgia long-arm statute. *Id.* The term "transact" in the statute has been interpreted according to its plain meaning as including negotiating or "carry[ing] on business," and the term "any" has been interpreted broadly to mean "to any extent" or degree. *Diamond Crystal*, 593 F.3d at 1261, 1265 n.18. To determine whether a nonresident has carried on business to any extent in Georgia, the Court examines both the tangible physical acts that occurred in the state as well as any intangible acts that may have occurred outside the state but have some relation to conduct in the state. *Id.* at 1264 (citing *Innovative Clinical & Consulting Servs., LLC, v. First Nat'l Bank of Ames*, 279 Ga. 672, 674-76, 620 S.E.2d 352, 355-56 (2005)). Acts that occur outside the state that may be considered include the

transmission of mail or telephone calls from outside the state into Georgia. *Id.* Ultimately, to find that a nonresident has transacted business in Georgia, the Court must find that "the nonresident defendant has purposefully done some act or consummated some transaction in Georgia." *Id.* (quoting *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517, 631 S.E.2d 734, 737 (2006)) (internal quotation marks omitted).

The Court finds the Eleventh Circuit's analysis in *Diamond Crystal* instructive here. In *Diamond Crystal*, the Court's thorough analysis addressed the requirements of Georgia's long-arm statute and the Constitution's Due Process Clause. Finding that jurisdiction existed under the transaction of business prong of Georgia's long-arm statute, the Court explained that a California distributor had transacted business within Georgia by (a) sending purchase orders to a Delaware company's manufacturing facility in Georgia through the Delaware company's broker in California, (b) requesting delivery by "customer pickup" at the Georgia plant and then directing third parties to accept delivery in Savannah, Georgia, (c) taking legal title pursuant to the F.O.B. Savannah UCC term, and (d) "promis[ing] to pay money into Georgia on the two transactions in question." *Id.* at 1266-67. The fact that the Delaware company's California broker first solicited the sales and all negotiations took place in California either in person or through telephone

10

conversations between representatives for the broker and the nonresident defendant did not defeat jurisdiction. *Id.* at 1255. As the Court explained, "transaction of business" cannot be simplified to a single factor or checklist but necessarily includes all the circumstances surrounding the business activity. *Id.* at 1266-67. Those circumstances included the fact that although the purchase orders were routed through the seller's intermediary in California, they were ultimately routed *to* a manufacturer in Georgia. *Id.* at 1265. The Court also observed that part of the performance of the nonresident defendant's contract occurred in Georgia because third-party customers would accept delivery in Georgia from the Georgia manufacturer. *Id.; see also Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375, 380 (5th Cir. 1980).

Here, SDT Air engaged in negotiations and communications directly (and indirectly through an out-of-state intermediary) with a Georgia company for the purchase of that Georgia company's asset in Georgia. The fact that Aflac first initiated the contact through its out-of-state broker does not defeat jurisdiction or diminish the quality of SDT Air's transaction of business in Georgia. SDT Air specifically sent a letter of intent to purchase the Georgia Aircraft to the Georgia company (Aflac) through that company's broker. Similar to the *Diamond Crystal* purchase orders containing specific terms referencing

the seller's Georgia manufacturing facility and requiring part performance of the contract in Savannah, Georgia, SDT Air's initial letter of intent named Aflac specifically as the seller and its final letter of intent included a term requiring SDT Air to send its mechanic to inspect the Aircraft and its records at the Aircraft's "home base in Columbus, Georgia." Routing SDT's letter of intent to purchase the Aircraft through Aflac's broker is analogous to routing purchase orders through an intermediary, which according to the Court in *Diamond Crystal* did not diminish the nature of the nonresident's transaction of business in the state to which the conduct was ultimately directed. 593 F.3d at 1265. Sending the documents through Aflac's broker does not negate the fact that SDT Air knowingly attempted to purchase the Aircraft from Aflac in Georgia and not from Guardian Jet, the Connecticut broker. The Court finds unconvincing SDT Air's argument that it never purposefully transacted business in Georgia because it directly transacted only with Aflac's broker in Connecticut or Aflac's lawyer in Florida.[3]

   In its opposition to jurisdiction, SDT Air ignores its direct contact with Aflac in Georgia during the negotiations. Those contacts include e-mail correspondence, a conference call,

---

[3] SDT Air's insistence that its transactions were with Guardian Jet and never with Aflac is squarely contradicted by the initial and final letters of intent drafted by SDT Air naming Aflac as the seller of the Aircraft. It also seems incompatible with the fact that SDT Air is suing Aflac, not Guardian Jet, for damages resulting from the failed negotiations.

communications to arrange for an inspection of the Aircraft in Georgia, and a letter sent to Aflac in Georgia demanding that the negotiations continue. By engaging in this conduct in Georgia to purchase an Aircraft located in Georgia from a corporation in Georgia with part of the performance of the contract to occur in Georgia (including inspection and delivery of the Aircraft), SDT Air transacted business in Georgia for purposes of Georgia's long-arm statute.

The Court also observes that the fact that the transaction was not ultimately consummated does not eliminate jurisdiction. *See id.* at 1266 (considering implied promises to pay even if they were not actually completed). SDT Air signed two letters of intent contemplating the performance of various terms surrounding the purchase of Aflac's Aircraft. While SDT Air never physically entered nor paid money in Georgia, the letter of intent to purchase Alfac's Aircraft contemplated that SDT Air would do so if the transaction had been consummated.

In summary, SDT Air chose to engage in negotiations to purchase an Aircraft from Aflac, and SDT Air continued these negotiations after finding out the Aircraft was based in Columbus, Georgia.[4] SDT Air chose to execute the letter of

---

[4] The Court does not find it credible that SDT Air was unaware of the transaction's connection to the state of Georgia. As a sophisticated commercial enterprise with the capability of engaging in a multi-million dollar purchase of a corporate jet located in Columbus, Georgia, SDT Air surely knew that the owner of that jet as well as the

intent knowing this, chose to submit escrow payments intended to be transferred to Aflac upon successful completion of the purchase, chose to make arrangements to send a mechanic to Georgia on behalf of SDT Air to inspect the Aircraft and its records, and chose to demand that Aflac continue negotiations or face a damages suit by sending letters directly addressed to an employee at Aflac's legal department in Georgia.  Considering all the circumstances surrounding SDT Air's conduct, the Court finds that SDT Air has transacted business in Georgia within the meaning of O.C.G.A. § 9-10-91(1).

## II.  Due Process

Having found that SDT Air's conduct satisfies the Georgia long-arm statute, the Court must next consider whether SDT Air's contacts with Georgia are sufficient to also satisfy the requirements of due process.  The Due Process Clause requires that SDT Air have certain minimum contacts with Georgia which indicate that it purposefully availed itself of the privilege of conducting business there by directing activities at residents of the forum; it also requires a sufficient nexus between those contacts and the resulting litigation, such that it should reasonably anticipate being haled into court there.  *Id.* at 1267 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474

---

two Aflac employees involved in the negotiations had some connection to Georgia.

(1985)).  "Once this showing is made, a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."  *Id.* (citing *Burger King*, 471 U.S. at 477).  Again, because SDT Air's conduct regarding the purchase of Aflac's Aircraft is precisely what has given rise to this declaratory judgment action, the question is whether that conduct includes the minimum contacts necessary to confer jurisdiction consistent with due process.

Preliminarily, the Court acknowledges that a nonresident cannot constitutionally be subjected to jurisdiction in Georgia simply because he contracted with (or attempted to contract with) a Georgia resident.  *Id.* at 1268 (citing *Burger King*, 471 U.S. at 478).  The exercise of jurisdiction over a nonresident on that basis alone would violate the nonresident's due process rights.  *Id.*  Therefore, if the transaction giving rise to Aflac's claims in this action simply involved the signing of letter of intent, SDT Air could not be compelled to defend that action in Georgia.  As previously explained, however, SDT Air did more than simply sign or attempt to sign a letter of intent with Aflac.

In addition to the letter of intent, SDT Air engaged in extensive discussions, correspondence, and negotiations (both directly and through an intermediary) with Aflac and its

Georgia-based employees.  The subject of those discussions and negotiations was a multi-million dollar asset located in Georgia, and the consummation of any purchase of that asset depended in part upon an inspection of that asset which was to occur in Georgia.  While SDT Air's contacts with Aflac and Georgia were restricted to this single attempted transaction, the transaction was a substantial one and the course of conduct necessary to consummate it was significant and purposefully directed to the state of Georgia.  *See* Demand Letter 1-2, ECF No. 19-9 at 2-3 (summarizing the extensive efforts SDT Air has directed toward the purchase of the Aircraft from Aflac in Columbus, Georgia).  Similar to the Court's findings in *Diamond Crystal,* the Court finds here that the "quality and nature" of the transaction's connection to Georgia is not so random and fortuitous that it cannot fairly be said that SDT Air should reasonably anticipate being haled into court in Georgia. *Diamond Crystal,* 593 F.3d at 1269-70.  This case is distinguishable from those cases finding no personal jurisdiction over a passive purchaser of goods where the *sole* contact with the forum is an agreement to purchase goods from a forum resident.  *See id.* at 1270-71 (distinguishing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055 (11th Cir. 1986)).[5]

---

[5] *Borg-Warner* involved a passive purchaser who contracted to buy goods

SDT Air's contacts with Georgia, including a letter of intent to purchase a multi-million dollar jet from Aflac located in Georgia, a requirement that SDT Air send a representative to Columbus, Georgia for the inspection, and extensive direct and indirect negotiations and other correspondence with Aflac employees in Columbus, Georgia, are sufficient to satisfy constitutional due process.[6]

Since SDT Air transacted business in Georgia and had constitutionally sufficient contacts with the state, the Court may exercise jurisdiction over SDT Air pursuant to Georgia's long-arm statute and consistent with due process. Accordingly, SDT Air's motion to dismiss for lack of personal jurisdiction must be denied.

### III. Dismissal, Stay, or Transfer

SDT Air argues that even if the Court may exercise personal jurisdiction over it, the Court should abstain from doing so. In support of this argument, SDT Air maintains that Aflac filed

---

from the forum resident, but had no other contacts with the forum except for later sending representatives to return defective goods. 786 F.2d at 1061-62 & n.4. The court noted that there was no term in the agreement requiring the seller to manufacture the goods in the forum and that the defendant's post-sale visit was not designed to negotiate, oversee, or enforce the contract. *Id.* at 1061-63. In contrast, SDT Air's letter of intent did have a term requiring the performance of the first inspection in Columbus, Georgia. The inspection visit was to be part of the performance of the agreement. Final Letter of Intent ¶ 6.

[6] SDT Air has also failed to present a "compelling case" that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. 593 F.3d at 1274.

this declaratory judgment action in anticipation of SDT Air's damages suit filed in Louisiana.  When there are overlapping lawsuits filed in different federal courts, the Eleventh Circuit applies a strong presumption in favor of the first-filed action. *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005). But there are exceptions to the first-filed rule if compelling circumstances exist.  *Id.*  One of the factors that a Court may consider is whether the declaratory judgment action, in an attempt to engage in improper forum shopping, was first filed in anticipation of legal proceedings.  *Id.*

For a declaratory judgment action to be improperly anticipatory, the party generally needs to have been specifically threatened with legal proceedings.  *Id.* at 1136-37; *see also Ven-Fuel Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).  But even if a declaratory judgment action is found to be done in anticipation of other litigation, this factor alone does not mandate that the first-filed action defer to the later action.  *Manuel*, 430 F.3d at 1137; *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 79 (11th Cir. 2013).

Here, SDT Air sent Aflac its Demand Letter on Thursday, March 7, 2013, demanding that Aflac continue negotiations by Friday March 8, 2013 by 3:00 PM (CST) or else it intended to file a suit for damages.  Demand Letter 2, ECF No. 19-9 at 3.

After subsequent negotiation broke down, Aflac filed this action for declaratory judgment on Tuesday March 12, 2013, and SDT Air filed its damages suit in federal court in Louisiana on Thursday March 14, 2013.   It is reasonable to conclude that Aflac's declaratory judgment action was filed in anticipation of SDT Air's impending lawsuit against it.   As noted, this factor, standing alone, is not necessarily dispositive as to whether SDT Air has satisfied its burden of establishing that an exception to the first-filed rule applies here.   The Court finds it appropriate to also consider other factors.

"[T]he forum's connection with the controversy" is one such factor to be considered.   *Manuel*, 430 F.3d at 1135.   This dispute's connection to this forum is significant.   Aflac, the seller and declaratory judgment plaintiff, is located in Georgia; the Aircraft, which is the subject of the letter of intent allegedly breached by Aflac, is located in Georgia; potential witnesses from Aflac are located in Georgia; the letter of intent was counter executed in Georgia; and partial performance related to the letter of intent was to occur in Georgia.   SDT Air is in Louisiana.   Aflac's aircraft broker is located in Connecticut, and its escrow agent is in Oklahoma. One of its attorneys with factual information regarding the dispute is in Florida.   The Court finds that the connection between the dispute and Georgia is strong and that this factor

19

weighs in favor of applying the first-filed rule.  *See id.* at 1137 (listing Georgia's connections to the action and finding they were not slight or manufactured).  The Court also rejects SDT Air's argument that the later-filed damages suit will more fully resolve the controversy.  *Ven-Fuel* 673 F.2d at 1195.  SDT Air will have the opportunity to fully litigate its counterclaim for damages in this action, and SDT Air has failed to demonstrate how the relief available in this action is significantly different than the relief available in Louisiana.

In summary, the anticipatory nature of Aflac's declaratory judgment action in this Court weighs in favor of SDT Air's argument for an exception to the first-filed rule, but this action's connection to this forum strongly supports having the action litigated here.  Moreover, SDT Air has failed to point to any other factors that rebut the first-filed presumption.  SDT Air has simply failed to demonstrate compelling circumstances to overcome the presumption that the first-filed Georgia action should take precedence over the later-filed Louisiana action.  Accordingly, this Court declines to abstain from hearing this action and denies SDT Air's motion to dismiss, stay, or transfer the action to the Eastern District of Louisiana.[7]

---

[7] The Court notes that SDT Air's damages suit in the Eastern District of Louisiana has been stayed pending the resolution of SDT Air's Motion to Dismiss in this Court.  Pl.'s Resp. Ex. 13, E.D. La. Order (May 24, 2013), ECF No. 19-17.

CONCLUSION

Having found that the Court may exercise personal jurisdiction over SDT Air, the Court denies SDT Air's Motion to Dismiss (ECF No. 18).  The Court also declines to dismiss, stay, or transfer the action in favor of the Louisiana action.


IT IS SO ORDERED, this 17th day of October, 2013.

                              S/Clay D. Land
                              _____
                                   CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE